UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RIC-MAN CONSTRUCTION, INC.,

              Plaintiff,                                 Case Number 19-13374

v.                                                               Honorable David M. Lawson

PIONEER SPECIAL RISK INSURANCE
SERVICES, INC. d/b/a PIONEER
UNDERWRITERS,

              Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT WITH PREJUDICE

The Court previously denied the plaintiff's motion for summary judgment in this insurance coverage dispute in which plaintiff Ric-Man Construction, Inc. seeks a declaration that defendant Pioneer Special Risk Insurance Services, Inc. breached its duty to defend, and ultimately to indemnify, the plaintiff in litigation pending in a state court. Now Pioneer, who did not file a counterclaim for the opposite relief, moves for summary judgment of dismissal. The motion is fully briefed, and oral argument will not aid in its disposition. Therefore, the Court will decide the motion on the papers submitted. E.D. Mich. LR 7.1(f)(2). The record demonstrates that the claims raised in the original complaint and cross-complaint in the underlying state court case are deemed to be a single claim that arose before coverage commenced, according to the proper construction of pertinent terms in the policy. Coverage therefore is unavailable for that claim, and the defendant is entitled to a judgment as a matter of law dismissing this case.

I.

The principal issue in this case is whether a "Professional Claim" for construction design work was made against plaintiff Ric-Man within the time period covered by a claims-made

insurance policy issued by defendant Pioneer. Wade Trim Associates, Inc. sued Ric-Man in state court for breaching a contract commissioned by the Oakland County Water Resource Commission (OCWRC) calling for certain work on a drainage project in Oakland County. Wade Trim accused Ric-Man of improper performance of the contract by failing to follow the contract design specifications, and it sought to hold Ric-Man responsible for the OCWRC's nonpayment under the contract. There is no question that the lawsuit against Ric-Man was commenced before Pioneer's insurance policy went into effect.

The OCWRC, also named as a defendant in the case, filed a crossclaim against Ric-Man in that case alleging defective construction and design workmanship on the project. All agree that the crossclaim was filed *after* Pioneer's policy went into effect.

If the crossclaim is considered a separate Professional Claim, then coverage is triggered because it was made during the policy period, and Pioneer would have a duty to defend Ric-Man on the crossclaim in the state court case. But if the state court complaint is considered a Professional Claim, and the crossclaim is considered part of the original claim, then there is no coverage because the triggering event occurred before the policy's effective date, and Pioneer has no duty to defend.

To decide this question, a few more details are required.

A. The Project

Pioneer's insurance policy was in effect from December 15, 2018 through June 30, 2020. According to the state court pleadings, in September 2014 the OCWRC awarded Ric-Man a contract for a project known as the Middlebelt Transport and Storage Tunnel, the purpose of which was to transmit "combined overflow" runoff and wastewater. The contract included a designation of Wade Trim to provide engineering services for the project.

One phase of the construction required the drilling of "groundwater control" dewatering wells, which involved numerous bores and pumping stations. Wade Trim alleged that Ric-Man failed to provide complete and accurate reports about site conditions and its implementation of those wells, contrary to the detailed specifications in the contract. Wade Trim says that Ric-Man drilled many of the wells to depths far greater than stated in plan documents and reports that were transmitted to Wade Trim, and it also failed diligently to monitor the effect of groundwater removal on nearby residential wells. When complaints arose that residential wells had run dry due to Ric-Man's careless work, Wade Trim was forced to undertake expensive redesign work on the project to correct the impact — work for which it allegedly never was paid fully by the County. Wade Trim took the position that the OCWRC was liable for the unpaid work under the contract, and it also alleged that Ric-Man was obligated contractually to indemnify it for any damages sought by the OCWRC due to the project's impact on residential water supplies.

On April 19, 2019, after the policy coverage commenced, the OCWRC filed a crossclaim in the state court litigation against Ric-Man pleading similar claims for breach of contract and indemnification. The OCWRC alleged that Ric-Man had failed to perform its work under the contract safely and prudently in conformance with detailed specifications for the construction and operation of the groundwater control systems. It contended that Ric-Man was obligated to cover any losses due to residential well depletion, road closures, and delays in completing the work, as well as any claims by aggrieved parties such as Wade Trim for unpaid expenses of corrective work.

Pioneer's position in this litigation has been that it is not obligated to appear and defend Ric-Man in the underlying state court case because in its view the amended complaint that was filed by Wade Trim (before the policy commenced) and the crossclaim filed by the OCWRC (after

the policy commencement date) are considered to be a "single claim" as defined by its policy language, and that "one claim" first arose outside the coverage period.

B. The State Court Litigation

Wade Trim's first amended complaint in the state court litigation, which was filed on May 29, 2018, pleaded three counts: (1) breach of contract against Ric-Man, (2) breach of contract against OCWRC, and (3) unjust enrichment against OCWRC. The first count recited numerous provisions of a contract between OCWRC and Ric-Man that defined the work to be performed in the ground water control project. The salient provisions stated that the County had retained Ric-Man to perform the ground water control work, that Wade Trim was designated as the engineer for the project, and that Ric-Man agreed to indemnify Wade Trim against all claims "arising out of, resulting from or occurring in connection with [] [Ric-Man's] breach of, or failure to comply with, the Agreement," except to the extent that any damages were caused solely by the negligence of Wade Trim in performing its design engineering work. Wade Trim Compl., ECF No. 20-2, PageID.408-09. The amended complaint pleaded that Ric-Man had breached the contract in numerous respects, but principally by drilling drainage wells to depths far below those that were specified by the project specifications. The drilling history was reported in diaries of the drilling work that were returned by Ric-Man.

Wade Trim also alleged that after becoming aware that the wells had impacted nearby residential water supplies, Ric-Man failed to halt use of the improperly drilled wells and failed to correct the faulty work or to come up with any plan to correct the problems. Wade Trim further alleged that the OCWRC then demanded that it perform redesign work to fix the problems affecting the residential wells, and it did so, but the OCWRC subsequently refused to pay Wade Trim for more than $500,000 in costs for its redesign work. Wade Trim alleged that as a result of

Ric-Man's failure to comply with the specifications and performance obligations under the contract it had suffered extensive damages due to those breaches.

The OCWRC filed a crossclaim against Ric-Man on April 19, 2019. It similarly alleged that Ric-Man had breached the project contract in numerous ways, but most conspicuously by "failing to properly design groundwater control systems," "failing to account for the possibility of damage to residential wells," "failing to advise OCWRC that groundwater control activities might impact surrounding structures and residential wells," "damaging existing structures while operating groundwater control systems," "failing to install and perform [sic] groundwater control systems in accordance with approved submittals regarding well depth and pump depth," and "failing to perform pump tests promised by its submittals." OCWRC Cross Compl., ECF No. 20-7, PageID.515. The OCWRC alleged that it had suffered losses due to those failures including expenses to fix damage to Middlebelt Road, claims by residents whose wells had failed, and excess expenses that Wade Trim had submitted for corrective work to repair the damage that was done.

## C. The Policy

Section I.B of the insurance policy, which was labeled "Professional Liability," committed to the following coverage:

> The Insurer shall pay on behalf of the Insured all sums in excess of the Self-Insured Retention stated in the Declarations which the Insured is legally obligated to pay as Damages because of a Professional Claim first made against the Insured during the Policy Period and reported to the Insurer, in writing, during the Policy Period, or any applicable Extended Reporting Period, provided that . . . the Professional Claim arises out of an actual or alleged act, error, or omission with respect to the rendering of or failure to render Professional Services by the Insured or by a Design Professional for whom the Insured is legally responsible.

Policy, ECF No. 20-2, PageID.458. As mentioned above, the "Policy Period" was defined in the declarations as December 15, 2018 through June 30, 2020. The declarations further stated that "Section I. Coverages A, B and F of this Policy provide claims made and reported coverage [that

- 5 -

applies] only to claims which are both first made by or against the insured and reported to the insurer during the policy period." *Id.* at PageID.456. The policy defined the term "Professional Claim" as "any demand, demand for arbitration or mediation or suit received by an Insured seeking Damages or correction of Professional Services and alleging liability or responsibility on the Insured's part or on the part of any entity or person for whom the Insured is legally responsible." *Id.* at PageID.466. The term "Professional Services" was defined to include "construction management, program management, project management, owner's representation and any design delegated responsibility or design assist performed by the Insured, including but not limited to constructability reviews or value engineering." *Ibid.* The policy stated the following about "Multiple Claims":

> Two or more . . . Professional Claims . . . arising out of a single act, error, omission [or] incident . . . or arising out of a series of acts, errors, omissions or incidents related to each other, will be considered a single claim subject to a single Each Claim Limit of Liability and one Self-Insured Retention. . . . All such claims, whenever made, shall be considered first made during the Policy Period as of the date the earliest claim was first made.

*Id.* at PageID.472.

### D. Proceedings

Ric-Man filed its complaint for declaratory relief in this case on November 15, 2019. It filed a motion for summary judgment on April 15, 2020, before formal discovery substantially had commenced. That motion was denied on February 26, 2021. Pioneer then filed the present motion for summary judgment after the discovery period closed. It argues that the "professional claim" alleging defective design for which Ric-Man requested a defense first was presented to it by non-party Wade Trim on May 29, 2018, when the original complaint was filed in the underlying state court case, and the crossclaim arises from the same transaction or occurrence and therefore must be a "single claim" for the purpose of determining coverage. There is no coverage for that claim,

- 6 -

it insists, because it fell outside the policy period. Alternately, Pioneer contends that a "Prior Notice" exclusion in the policy precludes coverage, because Ric-Man was made aware of a defective design claim even before Wade Trim filed its complaint in the state court litigation.

In response, Ric-Man repeats many of the arguments that it asserted unsuccessfully in support of its own motion for summary judgment, which the Court denied. It believes that an insurer should look "beyond the pleadings" to find a reason to *extend* hypothetical coverage, but not to *limit* coverage; that the allegations in the cross-complaint demonstrate that coverage was not foreclosed and therefore the duty to defend was triggered; and that because it is "not at all clear" that a design claim actually was alleged in the original complaint, that filing did not trigger the "prior notice" exclusion.

II.

Pioneer moved for summary judgment under Federal Rule of Civil Procedure 56(a). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627 (6th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the burden of showing that no genuine issues of material fact exist," and it "must demonstrate the 'basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* at 627-28 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

To rebut that showing, "[t]he nonmoving party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 628 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "[T]he party opposing the summary judgment motion must do more than simply

show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quotation marks omitted)). The opposing party must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

"The reviewing court must then determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman*, 901 F.3d at 628 (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must "view the facts and draw all reasonable inferences in favor of the non-moving party." *Ibid.* (quoting *Matsushita*, 475 U.S. at 587).

On an issue where the material facts are mostly settled, and the question before the court is purely a legal one, as here with the facts presented mostly by the state court pleadings and the text of the insurance policy, the summary judgment procedure is well suited for resolution of the case. *See Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009).

In its prior opinion, the Court held that the terms of the policy should be construed according to Michigan law. Neither party challenges that premise.

Under Michigan law, "an insurance contract is generally to be interpreted like any other contract, according to Michigan contract interpretation principles." *Whitehouse Condo. Grp., LLC v. Cincinnati Ins. Co.*, 569 F. App'x 413, 415 (6th Cir. 2014) (citing *Stryker Corp. v. XL Ins. Am.*, 735 F.3d 349, 354 (6th Cir. 2012); *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 461, 703 N.W.2d 23, 26 (2005)). "The relevant contract interpretation principles are simple enough — courts should enforce contract language in accordance with its plain and commonly used meaning, being careful to enforce specific and well-recognized terms," and the "contract should be read as a whole

instrument and with the goal of enforcing the intent of the parties." *Ibid.* (citing *Henderson v. State Farm Fire & Cas. Co.*, 460 Mich. 348, 354, 596 N.W.2d 190, 193-94 (1999); *Prestige Cas. Co. v. Michigan Mut. Ins. Co.*, 99 F.3d 1340, 1350 (6th Cir. 1996)).

Ric-Man's main mission in this case is to compel Pioneer to defend it against the crossclaim in state court. That duty — the duty to defend — is broader than a duty to indemnify Ric-Man for damages that might be awarded against it in that case. *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 452 Mich. 440, 450, 550 N.W.2d 475, 481 (1996). "If the allegations of a third party against the policyholder even arguably come within the policy coverage, the insurer must provide a defense." *Id.* at 450-51, 550 N.W.2d at 481. Pioneer's refusal to take up Ric-Man's defense in state court "can be vindicated only if, on its face, the state court complaint ruled out coverage." *Hamilton Specialty Ins. Co. v. Transition Inv., LLC*, 818 F. App'x 429, 433 (6th Cir. 2020). Moreover, "[t]he duty to defend cannot be limited by the precise language of the pleadings," because "[t]he insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible." *Am. Bumper & Mfg. Co.*, 452 Mich. at 452, 550 N.W.2d at 481 (citing *Shepard Marine Const. Co. v. Maryland Cas. Co.*, 73 Mich. App. 62, 65, 250 N.W.2d 541, 542 (1976)).

On the other hand, "[t]he duty to defend is related to the duty to indemnify in that it arises only with respect to insurance afforded by the policy. If the policy does not apply, there is no duty to defend." *Id.* at 450, 550 N.W.2d at 481.

There is no dispute here that the insurance policy in this case is of the claims-made variety. A claims-made policy "is one in which indemnity is provided no matter when the alleged error or omission or act of negligence occurred, provided the misdeed complained of is discovered and the claim for indemnity is made against the insurer during the policy period." *Stine v. Cont'l Cas. Co.*,

419 Mich. 89, 97, 349 N.W.2d 127, 130 (1984). Under such a policy, "the event causing liability is a third party making a claim upon an insured." *Id.* at 105, 349 N.W.2d at 134. Therefore, "the provision of the insuring agreement which is critical to establishing liability in such policies is the time at which the injured third person's claim is made against the insured." *Ibid.*

It is undisputed that the amended complaint in state court was filed before the coverage period commenced. The plaintiff cannot maintain that it was unaware of the claims stated against it in that pleading, since it was named as a defendant in the case, and it has never suggested that it was not promptly made aware of the suit via appropriate service of process. The cross-complaint by OCWRC was filed after the start of coverage, but it re-alleges nearly verbatim most of the same breaches that were recited in the amended complaint. Should these be considered a "single claim" under the policy language, and therefore "considered first made . . . as of the date the earliest claim was first made"?

The policy insures Ric-Man against "Professional Claims," which include liability for "Professional Services." It is undisputed that the term "professional services" is defined by the policy to include "any design delegated responsibility or design assist." Ric-Man asserts that it never was made aware of any "defective design" claim until the OCWRC filed its cross-complaint. It is true that both the amended complaint and the cross-complaint allege numerous breaches of Ric-Man's obligations under the contract that relate to duties other than "design" of the ground well system, e.g., in allegations that Ric-Man drilled the wells improperly and failed accurately to report the work that it performed, thus concealing its improper workmanship from both Wade Trim and the County until after substantial damage to adjoining properties had occurred. However, it also is clear that the amended complaint explicitly does allege a failure of performance in "design" of the groundwater wells.

Wade Trim's amended complaint, at paragraph 19, cites contract specification 31-2319, subsection 1.01.A.2, and quotes that specification as stating: "The Contractor will be responsible for *design of groundwater control system components* and for procuring all necessary permits for the work." Wade Trim Am. Comp., ECF No. 20-2, PageID.411, ¶ 19. In paragraph 32, the amended complaint further alleges that "*Ric-Man failed to perform each and every one of the obligations required by the Contract Documents, specifically failing to perform* in accordance with Articles 10 and 23 of the General Conditions, and *in accordance with Specification Sections 31-2319 and 31-3200* and constituted a breach of contract." *Id.* at PageID.416. That plainly comprises an allegation of a "design" failure, and it is found in the amended complaint. Certainly, if that amended complaint were filed during the policy period, those allegations would have triggered Pioneer's duty to defend Ric-Man in that case.

These allegations are replicated in the cross-complaint. In fact, the cross-complaint expressly incorporates the allegations of the amended complaint and adopts them "as alleged by Wade Trim" in its initiating pleading. Wade Trim alleged that Ric-Man's numerous breaches caused it to incur extraordinary expenses to correct the problems that were caused by Ric-Man's contract breaches, including improper drilling and operation of dewatering wells and its failure to report fully and accurately about the work that it did. The OCWRC alleged that those same failures by Ric-Man caused it, among other things, to incur claims for excess payments by Wade Trim which the OCWRC alleged that Ric-Man was obligated to cover. The OCWRC also alleged that Ric-Man owed it for other damages such as destruction of an adjoining roadway and depletion of nearby residential wells. However, although the allegations of injury vary, the claims in both pleadings are grounded substantially in the same failures of performance by Ric-Man, which both parties claimed had violated the terms of the construction contract in various ways.

Moreover, the breaches alleged in both the amended complaint and the cross-complaint all arose from a series of related actions or failures to act by the insured. According to the plain terms of the policy, the plaintiff's related serial breaches, including alleged failures in a "design" capacity, are deemed to be a "single claim." Under a reasonable reading of the plain policy language, the claims asserted by Wade Trim and later reasserted by Oakland County qualify as a "single claim," which first was presented before coverage commenced.

As the Michigan decisions on point recognize, the duty to defend is not triggered unless the claims pleaded in the underlying lawsuit "arguably come within the policy coverage." *Western Casualty*, 140 Mich. App. at 520, 364 N.W.2d at 369. The claims pleaded in the state court cross-complaint do not arguably fall within the policy coverage, because they are the "same claims" pleaded in the original (pre-coverage) state court complaint, in which Ric-Man also is named as a defendant. Michigan courts readily have recognized that whether the triggering event occurred during the effective period of the policy is relevant to the determination of whether a duty to defend is triggered. *See Frankenmuth*, 152 Mich. App. at 687, 394 N.W.2d at 72 (holding that the insurer obligated under an "occurrence" policy "*has a duty to defend* and provide coverage *if, and only if*, the alleged act or misdeed which constitutes the basis for Eurich's liability *occurred during the time the policy was in effect*"); *id.* at 688, 394 N.W.2d at 73 ("Since the policy was not in effect in 1979, plaintiff is not liable on the policy and *has no duty to defend*.") (emphases added). Because no valid coverage for the single claim is available, no duty to defend arose here.

III.

The undisputed facts show that the plaintiff is not entitled to the relief it seeks in its complaint in this case and that the defendant is entitled to a summary judgment of dismissal as a matter of law.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment (ECF No. 60) is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   June 23, 2021